# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

United States Courts
Southern District of Texas
F I L E D

NOV 27 2024

Nathan Ochsner, Clerk of Court

|  |  |  |
|---|---|---|
| Clayton Tuttle Brothers | § § § § § § § § § § § § § § | |
| Plaintiff, | | |
| vs | | Civil Action **4:24-cv-04397** |
| Officer J.D. Wilson et al., | | |
| Defendant. | | |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S EMERGENCY EX PARTE TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

TO THE HONORABLE COURT:

COMES NOW, Clayton Tuttle Brothers, Plaintiff in the above entitled action seeks an Emergency Ex Parte Temporary Restraining Order (TRO) and Preliminary Injunction, to halt Defendants' ongoing pattern of racketeering activity in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1964, and constitutional violations under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. This motion arises from Defendants' actions, including willful destruction of exculpatory evidence, fraud, interstate human trafficking, compelled participation in unconstitutional bond supervision programs, and systematic deprivation of Plaintiff's rights for financial gain through securities and investment conduits.

## FACTUAL BACKGROUND

Plaintiff has outlined a detailed history of Defendants' predicate acts forming a pattern of racketeering activity, including:

1

**I  Willful Destruction of Exculpatory Evidence**:

1.     On or about February 2020, during a disposition hearing, Defendant Robert Johnson directed CPS counsel, Brenda Howard-Koroma, to retain over 12,000 pages of CPS records rather than submitting them to the court or parties. CPS later reported that these records were purged/destroyed. This destruction of exculpatory evidence, pivotal to Plaintiff's defense, was deliberate and constitutes a violation of Brady v. Maryland, 373 U.S. 83, 87 (1963) (holding suppression of material evidence favorable to the accused violates due process) and Arizona v. Youngblood, 488 U.S. 51, 58 (1988) (requiring bad faith for destruction of potentially exculpatory evidence to constitute a constitutional violation).

2.     The CPS records included evidence supporting Plaintiff's claims that the charges against him were baseless and fabricated. The intentional spoliation of this evidence denied Plaintiff the ability to effectively defend himself and perpetuated the alleged RICO scheme.

**II   Fraudulent Acknowledgment:**

3.     In October 2018, Harris County officials, by and through Ms. Bryant and Mr. Ezell, used deception to coerce Plaintiff's signature on a fraudulent acknowledgment document. This document was used to justify Plaintiff's extradition, circumventing due process. See Napue v. Illinois, 360 U.S. 264, 269 (1959) (holding that the use of false evidence violates due process).

**III   Interstate Human Trafficking:**

4.   From December 22, 2018, to January 9, 2019, Plaintiff was transported across state lines in inhumane conditions by PTS Transport, contracted by Harris County.

These transports were not in furtherance of any legitimate government purpose and caused Plaintiff severe physical and emotional injury. See United States v. Kozminski, 487 U.S. 931, 948 (1988).

**IV   Compelled Bond Supervision:**

5.   Since June 24, 2019, Plaintiff has been subjected to unconstitutional bond supervision programs, which include monthly fees, GPS monitoring, and compelled participation under threat of imprisonment. This violates due process as articulated in Bearden v. Georgia, 461 U.S. 660, 667-68 (1983).

**V   Financial Exploitation and Securities Creation:**

6.   Harris County, through its Community Supervision and Corrections Department (CSCD), has generated over $100 million in anticipation notes and commercial paper securitized by Plaintiff's bond conditions and charges. These actions constitute financial exploitation for the enrichment of Harris County and its employees in violation of constitutional protections.

**VI   Judicial Misconduct:**

7.   Defendant Robert Johnson, among others, engaged in repeated acts that deprived Plaintiff of access to courts, manipulated judicial records, and enforced unconstitutional restrictions on Plaintiff's participation in legal proceedings. This resulted in the loss of significant assets, including 111 acres of property in New York.

**VII  LEGAL STANDARD**

8. To obtain a TRO or preliminary injunction, Plaintiff must demonstrate:

    a.   A substantial likelihood of success on the merits;

    b.   Irreparable harm absent relief;

3

c.    That the balance of equities favors the Plaintiff; and

d.    That an injunction serves the public interest. See Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).

## VIII.    PRESENTMENT

### 9.    Substantial Likelihood of Success on the Merits:

Plaintiff demonstrates a substantial likelihood of success under RICO, as Defendants engaged in a pattern of racketeering activity involving predicate acts such as fraud, destruction of evidence, and human trafficking. These acts violated federal and constitutional law, including:

a.    18 U.S.C. § 1341 (Mail Fraud) and § 1343 (Wire Fraud) through transmission of fraudulent documents and information.

b.    The Thirteenth Amendment, as interpreted in Kozminski, 487 U.S. 931, prohibiting involuntary servitude.

c.    The Fifth and Fourteenth Amendments' guarantees of due process and equal protection, systematically violated through suppression of exculpatory evidence and manipulation of court proceedings (Brady, 373 U.S. at 87; Youngblood, 488 U.S. at 58).

## IV.    Irreparable Harm

10.    The destruction of exculpatory evidence has irreparably harmed Plaintiff's ability to defend against false charges. Additionally, ongoing racketeering activities, financial exploitation, and deprivation of constitutional rights constitute irreparable harm. See Elrod v. Burns, 427 U.S. 347, 373 (1976) (holding that loss of constitutional freedoms constitutes irreparable injury).

4

## X. Balance of Equities

11.    The balance of equities tips decisively in Plaintiff's favor. The requested relief prevents Defendants from continuing unlawful actions that have already caused significant harm. Conversely, Defendants will not suffer legitimate harm from being enjoined from violating federal law and constitutional rights.

## XI. Public Interest

12.    The public interest is served by upholding constitutional rights and preventing government abuse of power. This case involves systemic misconduct affecting not only Plaintiff but the integrity of public institutions. See United States v. Mississippi, 380 U.S. 128, 140 (1965).

**WHEREFORE**, with the foregoing reasons being considered in totality, as applied, Plaintiff respectfully requests that the Court grant the Emergency Ex Parte TRO and Preliminary Injunction, enjoining Defendants from:

13.    Continuing racketeering activities, including financial exploitation through bond supervision programs;

14.    Engaging in judicial manipulation to deprive Plaintiff of fair access to courts;

15.    Destroying or concealing evidence critical to Plaintiff's defense;

16.    Retaliating against Plaintiff or interfering with Plaintiff's constitutional rights under the guise of governmental authority.

Respectfully submitted,

Dated: 11/27/2024

Clayton Tuttle Brothers
3903 Treaschwig Rd
Humble, Texas 77338

5

Affidavit of facts

On or about October 2018   plaintiff while incarcerated in FCI petersburg became aware that Harris county by and through Counselor Ms. Bryant and Unit manager Mr. Ezell, used deception in order to abrogate plaintiff's rights (Exhibit 1-3) by presenting a document under false pretenses to obtain a signature. This fraudulent acknowledgment signature operated to allow Plaintiff's release on November 29, 2018 into the custody of Harris county Sheriff's Office. Harris County Sheriff's Office initiated a hold for the purpose of extradition across state lines. This act affected interstate commerce by utilizing communication facilities to transmit the information.

On November 15th 2018 Plaintiff Executed a sworn Declaration in Chief affirming that said acknowledgment was not taken voluntarily

On November 15th 2018 Plaintiff Executed a Notice to Harris County, et al. bearing Registered Mail Number RE 226 015 285 US concerning the false claims/charges and notice of Non-abandonment of constitutional guarantees and protections.

On November 15th 2018 Plaintiff Executed a Notice to Harris County, et al. bearing Registered Mail Number RE 226 015 285 US concerning Plaintiff's (therein as Counter Claimant) Counter Claim for pursuing said unsubstantiated/ false claims/charges.

On November 17th 2018 Plaintiff Executed a sworn Declaration in Chief outlining the fraud and deception of the said Ms. Bryan and said Mr. Ezell

On November 19th 2018 Plaintiff initiated a verified complaint and delivered to the United States District Court of the Eastern District of Virginia by and through the US MARSHALS with a letter to the clerk notifying the clerk that said fraud would result in Human Trafficking (Exhibit   ). Said Complaint was subsequently dismissed as Plaintiff was trafficked outside of said district and Plaintiff lacked the access to continue the action (Exhibit   ).

On November 19th 2018 Plaintiff sent a copy of said complaint and Declaration to U.S. Congressman Donald McEachin at 131 Saratoga Street, Suffolk, Virginia 23434 requesting intervention.

On November 29th 2018 Plaintiff was taken to Riverside Regional Jail against his will. Plaintiff became aware that Riverside Regional Jail compels daily rent payments on all those incarcerated in that Facility. These compelled fees operated to take money from said Plaintiff's Account weekly.

Plaintiff attempted to challenge the extradition as stated in and was denied a proper hearing. The Arbiter of said hearing required Plaintiff to sign an extradition waiver and when said waiver was rejected   the said Arbiter reset the hearing for a week. This Mode of compulsion by resetting hearing continued week after week causing Plaintiff injury by utilizing said Arbiter's position of authority as a tool of oppression resulting in the signature by Plaintiff waiving extradition under duress against Plaintiff's Constitutionally Protected rights.

On December 22nd, 2018 continuing through January 9th, 2019 Plaintiff was trafficked, not in furtherance of a government purpose up and down the eastern coast of the United States several times in pin ball machine fashion as stated below:

On or about December 22nd, 2018 Plaintiff was picked up by PTS Transport at Riverside Regional Jail Chained and Placed in to a Metal cage-Like structure with three other prisoners and transported South to South Carolina then North into Northern Virginia wherein Plaintiff was placed in a county jail holdover for the Night.

On or about December 23rd, 2018 Plaintiff was transported North into Pennsylvania then south into Maryland and south again into Virginia.

On or about December 24th, 2018 through December 25th, 2018 Plaintiff was transported through Maryland, Pennsylvania, New York on to New Jersey then back to Western Pennsylvania then through Western New York on to Long Island New York; from Long Island North through Connecticut on to Vermont wherein Plaintiff was placed in a county Jail Holdover.

On or about December 26th, 2018 through December 27th, 2018 Plaintiff was transported south from Vermont through to western New York then through Pennsylvania on to Baltimore Maryland, from Baltimore on to a small holding Jail in Virginia.

On or about December 28th, 2018 Plaintiff was transported south through Virginia, North Carolina, South Carolina On to Atlanta Georgia wherein Plaintiff was held over for several days.

On or about December 28th, 2018 through January 9th, 2019 Plaintiff lost track of the amount of stops and number of States Plaintiff was trafficked through but said states do include Georgia through Kentucky on to Oklahoma in to western Texas then on to Houston where Plaintiff was Delivered to Harris County Jail.

On January 9th, 2019 Harris County set bail on said bonded false charges in the amount of $100,000 x 4 Totaling $400,000.00. The securitization effect of said false charges is approximately equal to $12,500,000.00 x 4 totaling $50,000,000.00 Dollars.

On January 15th, 2019 Judge Robert Johnson, upon an ex parte motion by James Murphy, assistant district attorney, ordered the collection of Plaintiff's blood for AIDS testing. (Exhibit ) Thereafter Plaintiff filed a motion opposing the testing order (EXHIBIT )for clear errors and said motion was omitted from the record.

On February 14th, 2019 Judge Robert reduced bail on said bonded false charges in the amount of $75,000 x 3 and $80,000.00 x 1 Totaling $305,000.00. The securitization effect of said false charges is approximately equal to $9,375,000.00 x 3 and $10,000,000.00 x 1 totaling $38,125,000.00 Dollars.

Between January 2019 - through May 2019 Plaintiff filed inter alia Motions to reduce bail, writ of Habeas Corpus, writ of mandamus all of which were ignored do to misapplication and/or erroneous interpretation of article 1 section 10 of the Texas Constitution.

On or about May 2019 Plaintiff's Counsel of Record, Jennifer R Gaut, (employed by the

7

Public Defender's Office) Offered to file a writ of Habeas Corpus on Plaintiff's behalf only on the condition Plaintiff would agree to give Plaintiff's blood. This essentially deprived Plaintiff of a Protected Right in order to compel Plaintiff's waiver of another right. Thereafter Plaintiff submitted to said Testing (e.g. gave 3 vials of blood for the sole purpose of said AIDS test) under said conditions.

On or about May 20th, 2019 Counsel for Defendant filed a Habeas Corpus with the Deputy Clerk of the 177th district court. Judge Robert Johnson requested counsel for Plaintiff withdraw said Habeas and work out an agreement with the assistant district attorney as Judge Robert Johnson did not like writs of Habeas Corpus being filed in his court.

On may 20th, 2019 A bond agreement was reached at $35,000.00 x 4 Totaling $140,000.00 The securitization effect of said bonded false charges is approximately equal to $4,375,000.00 x 4 Totaling $17,500,000.00 Dollars.

On June 24th, 2019 Plaintiff's Bond was approved and Plaintiff was discharged from the custody of the Harris County Sheriffs Office.

On or about June 24th 2019 through November 2024 (Present Day) Plaintiff has been compelled to participate through threat of imprisonment in "Bond Supervision" programs which include Participation Fees, compelled convenience fees, random drug testing, unlawful tracking through gps monitoring, and monthly appointments with Harris County CSCD Supervisors.

On or about February 7th, 2020 Counsel for Plaintiff, Erik Locascio, filed a Subpoena Duces Tecum demanding CPS appear and produce records at the February 19th, 2020 disposition hearing in front of Judge Robert Johnson.

On February 17th, 2020 Brenda Howard-Koroma, Regional Attorney representing CPS, emailed Plaintiff's Counsel informing said counsel that CPS intended to file a motion to protect records on the February 19th disposition hearing'

- During said Hearing Brenda Howard-Koroma, Regional Attorney representing CPS appeared with a Compact Disc containing over 12,000 pages of records to hand over to the court as discovery.

- Judge Robert Johnson did not take possession of the records, nor were the records turns over to the District Attorney's Office, or Plaintiff's counsel.

- Judge Robert Johnson directed said CPS Lawyer to Keep Possession of the records and set a hearing on April 13, 2020 for an In-Camera review.

On April 13, 2020 aforesaid In-Camera review hearing never took place. The Docket entry is: "On docket in error 5/14/2020"

- May 14th, 2020 docket entry: "on docket in error 6/25/2020"

- June 25th, 2020 docket entry: "on docket in error 8/5/2020"

8

• On or after August 5, 2020 CPS returned a statement that all records have been

    purged/destroyed.

On or Before September 18th, 2020 Harris County District Attorney's Office along with Plaintiff's counsel made Judge Robert Johnson aware that the CPS Records were missing. The said CPS records, pursuant to Plaintiffs counsel, appeared to be intentionally spoliated.

• On November 25th, 2015 CPS printed a file of at least 266 pages

• On or After November 25th, 2015 CPS sent said file to the district attorney's Office to be used as evidence and/or reference for the said False Charges.

• On or before February 15th, 2019 said CPS records appear to be altered while in

    the possession and custody of the Harris County District Attorney's office as indicated by the file name of said records: "CPS 20190215_153605-2". The file name indicates that it was created on 02/15/2019 with "-2" appearing to indicate multiple copies.

• Said altered file has at least seven (7) entries weighing in favor that said charges

    are false.

On September 18th 2020 through February 11th, 2021 Defendants (incorporated by reference), perpetuated their predicate activity in furtherance of a RICO.

On or about March 17th, 2021, during a disposition hearing, Defendant Robert Johnson amended Plaintiff's bond conditions which prohibited Plaintiff from effectively participating in Plaintiff's Divorce proceeding in New York by prohibiting contact with ex wife directly or by and through any Third Party.

• Said Order resulted in the loss of Hundreds of Thousands of Dollars in assets, equipment, tools, Vehicles, Silver Bullion and additionally, the loss of 111 acres

    in St. Lawrence County, New York.

• During said hearing Counsel for Plaintiff, Erik Locascio protested the unconstitutionality of Defendants Order.

• Defendant Robert Johnson with callous indifference authorized counsel to appeal [his] decision to any court he likes.

• Shortly after said hearing Defendant Harris County Public Defender's Office ("HCPDO") changed Plaintiff's counsel.

On or about April 27th, 2021 Defendant HCPDO filed a Motion to Substitute Counsel.

On or about June 18th, 2021, during a Disposition setting, Counsel for Plaintiff, Jennifer Gaut filed a Motion to Quash indictment due to its Unconstitutionality.

9

- During said hearing Defendant Judge Robert Johnson Questioned Defendant Edward Appelbaum, assistant District Attorney as to whether the District Attorney's Office planned on issuing a written Response.

- Defendant Appelbaum stated they would not respond as they no longer desired

to pursue prosecution in that case.

On June 18th, 2021 through November 2024 (Present Day) said case contiues to be docketed for prosecution.

On or about July 25th, 2022 Counsel for Plaintiff, Jennifer Gaut, filed an official motion to amend bond conditions due to the violation of Constitutionally Protected Rights to be heard at a Disposition setting on July 26th, 2022.

- During said Hearing counsel for Plaintiff argued the unconstitutional nature of said bonds conditions.

- Defendant Judge Robert Johnson denied said motion.

- Defendant Robert Johnson stated with callous indifference to appeal his decision to whatever court counsel desired.

- On July 26th, 2022 through February 14th, 2023 Counsel for Plaintiff never appealed Defendant Judge Johnson's Decision.

On February 14th, 2023 Counsel for Plaintiff, Jennifer Gaut withdrew as counsel for Plaintiff.

On February 14th 2023, Defendant Robert Johnson Ordered Plaintiff to Hire Counsel

On or about April 18th, 2023 Plaintiff Hired counsel Norwood Richardson under contract.

- Said Contract contained stipulations of performance, inter alia, by filing motions to have gps monitor removed, Habeas Corpus, if Necessary, to guarantee all proceedings would be on the record.

- On April 18th, 2023 Norwood Richardson appeared as counsel for Plaintiff during said hearing Defendant Robert Johnson winked at Plaintiff's Counsel and told counsel he would allow him all the time he needed.

- After said interaction between Defendant Robert Johnson and Plaintiff's counsel, Norwood Richardson continuing through September 11th, 2023 (date of removal), Plaintiff's counsel made no attempt to perform on said contract nor effectively represent Plaintiff.

- On or after April 2023 Norwood Richardson was placed on the court's lawyer rotation and now receives approximately $8,000.00 per month as appointed counsel from Harris County.

- Prior to April 2023 Norwood Richardson was not on the court's lawyer rotation.

On September 12th, 2023 Defendant Robert Johnson appointed James Dennis Smith as counsel for Plaintiff

On November 13th, 2024 Counsel James Smith participated in Defendant's actions in furtherance of said RICO with a predicate act of assisting Defendant's in advancing prosecution on said false charges.

### THE CREATION OF CASH EQUIVALENTS TO FURTHER RICO ACTIVITY

Harris County along with Harris County Community Supervision and Corrections Department (CSCD) has created $100,000,000.00 (100 Million) worth of Commercial Paper and Anticipation Notes. The Securities created by and through Plaintiff and/or court orders related to said bonded false charges appear to be worth approximately $108,000.00 per year over the course of five (5) years with Maturity dates of June 2024 (1) and November 2024 (3) Totaling $540,000.00 Dollars. The value would be approximately $295.89 per diem. Which would appear to include an admin service fee of $100.00 and a compelled Debt Service rate of 37% or $72.00 which is taken from Plaintiff.

It appears likely that the value of said securities after the administrative Fee(s) of Harris County, et al. is approximately $19,330.00 daily with a yearly total of approximately $7,055,450.00 with a Five (5) year approximate total of $35,277,250.00 Dollars(I do not believe these values include any securitization and/or monetization of said false charges with respect to City of Houston's issuance of Fraudulent/false warrant(s) in furtherance of stated Rico utilizing its "Liquidity Facility" held by Wells Fargo Bank, N.A.)1

### VERIFICATION

I, Clayton Brothers, do hereby verify under penalty of perjury the information contained herein is true and correct and supported by records and document in the possession of plaintiff and/or the defendants

Respectfully submitted,

Dated: 11/27/2024

Clayton Tuttle Brothers
3903 Treaschwig Rd
Humble, Texas 77338
832.728.6356

11